61877 Ms. M v. Falmouth School Department After Ms. M, we will take a break. Could I reserve a minute for the boss? Yes, you may. My name is Eric Erland. I'm the attorney for the Falmouth School Department. We're appealing a district court ruling that found that Falmouth violated the special ed laws, the IDEA, by failing to implement the child's IEP, even though Falmouth had implemented every single service, every minute called for in that IEP, addressed every single goal in that IEP, and in fact provided meaningful benefit to the student as a result. Before you get going, I'd like to ask one question. What is this case really about? You've got a $4,000-odd verdict here. Is this about legal fees? Not from our perspective. It's not about legal fees. It's really about when you're going to go out beyond the four corners of an IEP and turn a written notice, this notification document essentially, into an IEP. And that has ramifications throughout the state. Your opponent says you waived that argument because you did not yourself appeal from the magistrate judges which ruled against you on this issue of what's in an IEP. This court has set a standard that requires the person in our situation to fairly raise the issue. We raised it at every stage, every single argument that we've presented to you. We presented to the district court judge. We prevailed at the magistrate level, and we were not going to be filing an appeal of a magistrate or request for review of a magistrate decision that we won. But as soon as my opponent filed his objections, we raised and spent four pages in our opposition to his objection, raising and presenting all of these arguments. Okay. Now, this question of what's in the IEP has a lot of iterations. One of them is the four corners rule, which we haven't adopted because we haven't ruled on it. Did you make the four corners argument to the magistrate judge and then to the district judge? Yes, we made it at every step. Truly, if you pull up our opposition to their objection to the district court judge, you'll see four pages in it addressing the scope of this argument. Just so I understand, because the terminology of the four corners argument can mean a lot of different things potentially. One thing it can mean is literally four corners, that's it, that's an absolute rule. I don't even think you're making that argument to us, if I understand it, because you seem to suggest, and I can understand why you would suggest it, just like the Seventh Circuit has suggested, there may be circumstances in which you can look to extrinsic evidence to give meaning to the IEP. But it can't be the case that simply because an IEP's term is ambiguous, you then turn to extrinsic evidence. And as I understood you to be arguing, and I take it you argued this to the district court, this is not the kind of term that is susceptible or requires one to get extrinsic evidence, because the nature of this term is one that the IDEA allows to be as vague as it was. That is exactly right. There are certain mandatory pieces of the IEP. If all those mandatory pieces of the IEP are in the IEP, and in this case using language that the state of Maine dictates them to use, specialized instruction, that was what gave the hiccup to the court below, and they found that language vague. But it's actually a defined term under the state rules, going on for a good paragraph as to what that term means. So the problem with this issue is a lot of terms in IEPs are vague. And IDEA contemplates a lot of terms being vague. And it's never entirely clear whether the vagueness is intended by both parties or not. So I suppose there could be a case in which you had a vague term. But the extrinsic evidence showed, beyond a shadow of a doubt, that the parties actually understood that vague term to be a term of art for a specific thing. And I take it in that case, too, you're saying maybe that also is permissible. But that's not our case. Because when you look at the evidence here, there's nothing in the extrinsic evidence that shows that the parties said specifically, we understand the IEP to include SPIRE. Is that right? I agree with all that, too. If you're looking for what is actually an IDEA enforceable claim, and if that IEP includes all the mandatory pieces, even in their arguably vagueness, I believe in an enforcement action you have met your burden. But if you are going outside that term, you've got to look at a wide breadth of extrinsic evidence, which this district court really only looked at five words as part of a long narrative that is almost indisputable about what was going on in this case. If I understand it correctly, it's your view that the notice is simply a notice of what transpired at a previous meeting. And it says, we more or less agreed to the following. And I think your defense is that in this case, the response was, no, SPIRE is not an appropriate program and you shouldn't be using it. And therefore, when the actual IEP came out, it just spoke in general terms about the kind of reading program which was going to be offered to the student. And is it your position those general terms were sufficient without looking at other evidence to determine what the student was going to get, and therefore it was an appropriate IEP? Those general terms are sufficient following law in terms of how they are directed to write the IEP. It's also our position that no one ever agreed that SPIRE as a reading program should be in the IEP. The notice served the point that the parent was very upset about reading programming. And the record's really clear about that. But just so I understand, the timing point might matter a little bit. Her objection to SPIRE postdates the IEP that she contends included SPIRE. It doesn't predate it. Just yes, no, and that. Yes. So it's not the case that we have a situation here where she said, don't include SPIRE in the IEP. Then they have a vague IEP. And now she says, see, it includes SPIRE. It's better for her than that. She says there was this term in the IEP that was always understood to be SPIRE. And what she's saying is, I don't like that SPIRE's in the IEP. I should get something better from that. But that doesn't mean that she's conceding or suggesting that SPIRE was not in the IEP. She's been consistently arguing that it is. I don't know if she has been, but her attorney has been. Her attorney has been. Yes. The IEP. That doesn't mean you lose. I just want to understand if that's the. I understand. I don't quite go along with the sequence there. We strongly urge this court not to find the term specialized instruction to be vague. The notice itself can say a lot of things without saying this is part of the IEP. The notice could have said we will provide reading instruction in room 222 by Mrs. Smith on Monday, Tuesday, and Wednesday because we want to tell parents what's going to happen. Now, that doesn't mean the IEP is vague because we then didn't put room 222 Mrs. Smith into the IEP. It's just notifying the family. No, I understand. I'm just trying to get the sequence right. That doesn't relate to the sequence. So in this case, we had a family that was upset about the reading program. We went to a meeting and we offered, proposed a reading program SPIRE. I understood this differently than Judge Stahl just articulated. Not that an agreement had been reached at the meeting to include SPIRE, and that's why you sent the notice. It was more an offer on the part of the school system. Will this do? That's exactly right. And did that predate the IEP or postdate the IEP? The written notice was written a few days after the meeting. And did the meeting predate or postdate? The IEP was then issued afterwards. After the meeting. Right, and we then send out the written notice. And after the response to the written notice. And then when she gets the written notice five days later, because the written notice did say agree, but when she gets the written notice five days later, she writes a lengthy letter saying the written notice is totally wrong in almost every way possible, including I did not agree to SPIRE. But when is the IEP in place? Before she writes that? The IEP technically goes into place ten days after she receives the IEP. After she receives the written notice and the IEP. And she received the IEP around November 20th. Her letter objecting to the written notice actually was issued before she got a copy of the IEP. She was objecting to the written notice. She says your written notice is horrible. For the purpose of determining when the IEP term is set, assuming we don't have a four corners rule. I'm just trying to understand how this would work. Assuming we don't have a four corners rule, you can look to extrinsic evidence. What is the date up until which you could look at extrinsic evidence of what the IEP? In other words, is it from the moment they first say here's what's going to be in the IEP? Is it from the moment there's a written notice or from the moment the IEP takes effect? I assume what we're trying to do is figure out what the parties intended to be in the IEP. And assuming there's some vagueness in that IEP that warrants resolution, then you could look at the breadth of extrinsic evidence, not just five words, but the breadth of it and what that tells you about what the parties agreed to at the meeting and intended to be there. Now, again, just because the written notice says something doesn't mean they intended it to be in the IEP. The written notices serve much broader purposes than that. My time is up, I believe. I mean, we do contest the district court's finding that there was a material violation when there was, in fact, material benefit in the areas. Can I ask one last question? Is there anything in the record that explains why the school district was telling her that it would provide SPIRE when no one in the school district was qualified to provide SPIRE? I think you'll see from the record that the speech pathologist was sufficiently trained to provide SPIRE. Kim Mosca, the special ed teacher, was not. But then it never was provided? It never was provided. Is there anything in the record that's the only reason in the record? Because I thought she was not getting it after the agreement but before she objected, before she learned of it. Is that wrong? The IEP hadn't been issued yet. The IEP came out of that meeting around November 20th. By that point in time, she had filed a hearing challenging the reading program. A whole bunch of stuff was happening, making clear she was not happy with the things that had been decided. Thelmuth was trying to be responsive to what her concerns were and worked it out in a mediation agreement. Thank you. Morning, Your Honors. Richard O'Mara for Ms. M. You just had a nice discussion with Mr. Herlin about a lot of the facts, but I need to remind the Court, these are all factual findings. And we've had factual findings by an independent hearing officer, recommended by a magistrate judge, and then confirmed by Judge Hornby, and all three of them, on all three levels, have found that the SPIRE program became part of the IEP at November, that the school district failed to implement the IEP, and that the mother's email afterwards, complaining that SPIRE was not research-based, which the IDA requires, did not obstruct the provision of SPIRE to the student. So all three fact-finders have agreed, and it's a clear error review. But they all seem to be coming to that conclusion, based on a predicate legal conclusion, that a vague phrase entitles the fact-finder to start looking at extrinsic evidence, and I don't know why that is something we have to defer to. That's a legal judgment about how the IEP works under the statute, and I don't really understand how it could be sensible that a vague phrase in an IEP entitles one to start looking at extrinsic evidence just because it's ambiguous. Well, for that, you need to understand how the IEP team process works, and Mr. Hill, I think, has misrepresented it. It doesn't work just by agreement, all right? It asks for consensus, but in the absence of consensus, the written notice tells the parent what is going to be provided to the child. The parent has one and only one option, and that's to file a due process request, challenge the proposal. In this case, she did, and then she resolved that without correcting the child. When do you say the IEP was actually given to her? The way you structured it, you said she made a later objection, so you seem to say there was an IEP before she made an objection. Right. The paper copy arrived on November 20th, I believe. However, the team decided what was going to go into the IEP on October 31st, and the written notice documented it on November 5th. But that's simply a notice. It's not the IEP. No, it is what is going to be in the IEP unless the parent takes the process. It's a notice of what came out of a meeting between the district and the parent. Correct. And at that point, it's still not the IEP. A formal IEP has to be developed. My understanding of what you're saying is that that notice is in effect the actual IEP and it is only a ministerial job to put the IEP into writing. Am I correct as to what you're arguing? That is correct, because the purpose of the written notice is to allow the parent to challenge the determinations of the meeting. So the parent doesn't challenge it in a formal way. It's your position that it was insufficient for the parent to write and say, SPIRE is not the program that I agreed to and it should not be used for my child. Correct. That does not change the determination of the meeting. The determination of the meeting is what the special education director, who's in charge of the meeting, says is going to the IEP if the parent objects. I'm puzzled because if you're right, the way people are writing written notices in IEPs is bizarre. Because they're writing IEPs vaguely and written notices specifically. In this case, that's what happened. That's got to be the case generally. I don't think it would be a good thing. I mean, either you would think that the IEP, if you were right, the written notice in the IEP should be identical. But they're not generally. And the reason they're not, I had thought, was quite sensible. And this is true in ERISA with summary plan descriptions, that you have discretion in the school district through the IEP. But what does that mean practically? Well, here's how we're going to implement it right now. If you don't like that, you can then challenge the due process hearing. This won't be getting me a fate. This won't be meaningful. But I'm not saying that you're in violation of the IEP itself. It's just giving me some idea of how you're going to proceed to implement it so I can make a fair assessment of whether I'll get a free and appropriate education. I thought that's how the whole thing worked. Is that wrong? I totally disagree with that. Okay. It's a case that suggests I'm wrong. It's right in the regulations. The entire process is supposed to happen at the meeting with the parents as equal members. This parent had been advocating for a structured reading program for over a year and a half for her daughter. But she got one. No, Falbeth continued not to do one. And by a structured reading program, that's one that has a sequence of phonetic lessons that go through the entire range of products that are needed as reading programs. But see, even then you're just saying, you say structured reading program. That's not an agreement to have Spire. No. That's an agreement to have a structured reading program, which is more vague than the more specific thing of Spire. It seems like that's the point. The facts are, she asked for this program for a year and a half. Falbeth continued not to deliver one. And her daughter's reading continued not to progress. Her goal for the start of third grade was to be at level 16 of this developmental reading assessment. And she was at level 8, which is the same place she had been a year before. She made no progress in the Falbeth program. She came to the team and said, I still want a structured reading program. And you'll see in the early October meeting, the team agrees to provide that. That's what we relied on. What's that? That is a structured reading program. Is that the same thing as Spire? Spire is one of the structured reading programs that could be selected. And so there's a second meeting. But how do you say that, therefore, the IEP included a requirement to have Spire in particular? Because it was a second meeting. The first meeting did not decide on which program. It just said, Falbeth proposes and will deliver a structured reading program, which was not what they were doing. And then later in October they meet and they propose Spire as the selection. And the parent did not know about Spire at the time, later researched it and found that the research center shows no research supporting it. Judge Stahl has a question. Then in the final analysis, in the actual formal IEP, didn't they in effect say she's going to get a structured reading program? It does not say that. In the final IEP, the document that was produced at the end of November, the school tried to avoid all accountability by putting all of her specialized services in one line. It said specially designed instruction, literacy and math for 8 hours and 45 minutes per week with no specification of structured program, even how much was devoted to reading or how much was devoted to math. And the schools do this, and I think it goes back to Judge Barron's question, but that's not the objection that she has made in this litigation. I mean, it looks to all purposes like she rejects this specific program and then the district court turns around and awards her tuition because they failed to provide a program which she had rejected. I think there's another issue of law here, which is what role her rejection plays. And it is not necessarily clear that the reading below as a matter of law is correct, that she has to have somehow obstructed for her rejection to be considered by the school system. That makes no sense. Just to be clear, her email is not a rejection. Her email says I don't agree with it, and then she brought a due process hearing challenging it and then resolved it letting it stand.  The email that everybody seems to be agreeing is the possible rejection. You wouldn't use that term. They use that term. What's the date of that email? That is November, I think, 15th. November what? I think it's the 15th or 14th. On your view, is that email sent before or after the IEP is in place? The effective date of the IEP was November 4th. So that's sent after. It's sent after the IEP is in place. I see. So your view is the first time she says anything that would constitute a rejection of SPIRE occurs after the IEP was in place. And therefore you say it's not inconsistent with her position that the IEP included SPIRE because what she's objecting to at that point is whether this is a viable IEP, she'd like it to be done differently. She's not saying the IEP doesn't have SPIRE in it. In fact, it's the opposite argument. It's I don't like this IEP because it has SPIRE in it, correct? She's saying you fooled me at the meeting and told me it was research-based. I've now looked it up and found out that you didn't actually give me true information. But for that argument to work, there's a predicate argument, which is that the language in the IEP that she had prior to November 14th is vague in a way that entitles fact-finders to start looking at extrinsic evidence to give it content. What law do you have short of an argument that any vague phrase, any ambiguous phrase in an IEP requires that we look to extrinsic evidence to flesh it out because that kind of rule concerns me? The rule is right in the statute. The statute says that the school district must provide in the IEP a statement of the services to be provided. What law says that specialized services doesn't count as a satisfaction of that statutory requirement? Because the U.S. Department of Ed has said in its guidances that the team decides the services. If the team decides that a particular program needs to be delivered, it needs to go in the IEP. It's not a requirement that teams do this. But if they do, and in this case they did decide structured reading program, and they did decide on SPIRE, it needs to go in. What the school should have done was to reconvene the IEP team meeting after getting her objection to the research basis, and it didn't. It just went back to the old method that was ineffective. Okay, thank you. Thank you. Very briefly, Your Honor, Dick's got the sequence wrong. The letter is November 14th, received on November 15th by the school. The IEP is dated November 20th, so the IEP comes out afterwards. And attached to the IEP is the response to the parents' 24 questions, including the description of the reading services they would actually be describing. And he's got it wrong because you may not know, but I take it he's tracing it back to the meeting as opposed to the actual paper? Is that the dispute that you're having factually? You don't know? I don't know. I don't know. And also, he takes issue with the concept of agreement. If we're going to look at extrinsic evidence, are we looking for agreement or not? Where does agreement play a role in that? Bear in mind, there are provisions in the IDEA and the state and federal special ed rules that talk about when you're going to change an IEP. And the party's changing it without a meeting. And I'm not saying this is right on point, but it says you have to have agreement between the parties if you're going to change it. Here we're talking about supplementing an IEP with this spire that's not in it. And it would seem as though agreement would be key in any event. That's certainly what the judges were looking for down below. And his client declared there is no agreement. Thank you. Thank you.